UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| GINO RODRIGUEZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. V-09-74 |
| § | |
| ALCOA INC. & ALCOA WORLD § | |
| ALUMINA, LLC, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION & ORDER

Plaintiff Gino Rodriguez ("Rodriguez") has sued Alcoa Inc. and Alcoa World Alumina, LLC ("Alcoa") alleging violations of the Americans with Disabilities Act (ADA). Pending before the Court is Alcoa's Motion for Summary Judgment (Dkt. No. 13), which was filed December 22, 2010. Rodriguez has not filed a response.[1] After careful consideration of the motion, record, and applicable law, the Court is of the opinion that Alcoa's Motion for Summary Judgment should be **GRANTED**.

## I. Background

Due to a birth defect, Rodriguez is completely deaf in his left ear. (Complaint, Dkt. No. 1 ¶ 6; Rodriguez Dep., Dkt. No. 13, Ex. 1 at 7:24—8:1.) Rodriguez also has significant hearing loss in his right ear, although he claims his hearing in his right ear is "good for [him]." (Compl. ¶ 6; Rodriguez Dep. at 10:3-4.) As a child, Rodriguez obtained a hearing aid for his left ear, but he stopped using it because it did not improve his hearing. (Rodriguez Dep. at 8:14—9:23.) Despite his hearing impairment, Rodriguez says he "live[s] a normal life." (*Id.* at 227:7-12), and the only

---

1. *See* S.D. TEX. LOCAL RULES 7.3, 7.4 (providing that opposed motions will be submitted to the judge for ruling 21 days from filing, responses must be filed by the submission date, and failure to respond will be taken as a representation of no opposition). The deadline for Rodriguez' response was January 12, 2011.

occasion his hearing impairment has ever prevented him from engaging in a chosen activity was in 1977, when he attempted to join the military but failed the physical examination. (*Id.* at 58:22—59:10.)

In October 2007, Rodriguez applied for a position at Alcoa's Point Comfort, Texas facility. (Compl. ¶ 7.) Alcoa invited Rodriguez to interview for a Plant Utility Operator ("Operator") position, during which Rodriguez met with three Alcoa employees, including Bret Martinets, the Senior Industrial Relations Supervisor. (Rodriguez Dep. at 71:8-12; Martinets Aff., Dkt. No. 13, Ex. 2 ¶ 4.) Mr. Martinets sent Rodriguez a letter on approximately December 27, 2007, extending him a conditional job offer. (Rodriguez Dep. at 220:16—221:16; Martinets Aff. ¶ 4.) The letter listed a start date of January 14, 2008, but clearly stated, "This offer is contingent upon your passing of our pre-employment physical exam." (Letter, Dkt. No. 13, Ex. 2, Tab 2.)

Fully aware of the conditional nature of the employment offer, Rodriguez underwent the pre-employment physical examination. (Rodriguez Dep. at 232:11-23.) As part of the examination process, Rodriguez completed a Medical and Occupational Health History form (MOHH) for Alcoa. (*Id.* at 204:18-23.) The "Past Medical History" section of the MOHH provides boxes for applicants to identify preexisting medical conditions. (MOHH Form, Dkt. No. 13, Ex. 6, Tab 5 at 1.) Despite his known hearing impairment, Rodriguez left the box on his MOHH for "Deafness/Hearing Loss/Ear Problems" blank and checked the box labeled "None of the Above." (*Id.* at 1; Rodriguez Dep. at 205:12—206:17.) Likewise, the "Review of Symptoms" section asks applicants to check boxes for any symptoms they may have experienced in the previous year. (MOHH Form at 2.) Although the form includes a box for "Difficulty with Ears or noted: Loss of Hearing/Broken Ear Drum/Hearing Aid," Rodriguez failed to check a single box

2

in that section. (*Id.*; Rodriguez Dep. at 206:24—207:21.) After completing the MOHH form, Rodriguez reported to the Point Comfort medical facility ("Alcoa Medical") to complete his physical exam, which included a hearing test.[2] (Rodriguez Dep. at 113:12-16; Williams Aff., Dkt. No. 13, Ex. 8 ¶ 3.) At no time prior to this test did Rodriguez inform anyone at Alcoa of his hearing impairment. (Rodriguez Dep. at 116:7-19, 125:19-25.)

Travis Williams, Senior Medical Coordinator at Alcoa Medical, conducted Rodriguez's hearing exam on January 7, 2008. (Williams Aff., Dkt. No. 13, Ex. 8 ¶¶ 3, 4.) After the initial hearing exam revealed that Rodriguez registered no hearing in his left ear and very little in the right, Ms. Williams called in physician Ricky McShane to ensure she was administering the exam correctly and to ensure the testing equipment was functioning properly. (*Id*. ¶¶ 4—6; Rodriguez Dep. at 118:1—119:5; McShane Aff., Dkt. No. 13, Ex. 6 ¶¶ 8—9.) Rodriguez watched in silence as Dr. McShane tested the equipment on himself. (Rodriguez Dep. at 123:17-21; McShane Aff. ¶ 8.) Once Dr. McShane and Ms. Williams realized the equipment was operating properly, Dr. McShane asked Rodriguez if he might be deaf in his left ear, to which Rodriguez finally revealed that he was. (Rodriguez Dep. at 122:20-22; McShane Aff. ¶ 9; Williams Aff. ¶ 6.)

Based on the test results, Dr. McShane explained to Rodriguez that his hearing did not meet Alcoa's minimum standards for the Operator position. (McShane Aff. ¶ 10.) In accordance with Alcoa's Mobile Equipment Operator Evaluation policy, Rodriguez could have taken his hearing exam with the use of a corrective hearing aid, but Rodriguez did not have a hearing aid at the time his hearing test was conducted. (*Id.* ¶ 11.) Accordingly, Dr. McShane instructed

---

2. In addition to a hearing test, Rodriguez also completed and failed a vision test during the pre-employment physical exam. Because Rodriguez' hearing impairment forms the basis of his complaints under the ADA, the Court will address only the hearing test and its results.

3

Rodriguez to have his hearing corrected and return to Alcoa Medical to take the test again. (*Id.* ¶ 10.)

At Dr. McShane's direction, Ms. Williams contacted Mr. Martinets to explain that there were some issues with Rodriguez's pre-employment physical exam that Rodriguez needed to resolve before Dr. McShane could complete the exam. (Martinets Aff. ¶ 7; Williams Aff. ¶ 8.) After hearing nothing from Rodriguez for several days, Ms. Williams again contacted Mr. Martinets on January 11, 2008, to inform him that Dr. McShane could not clear Rodriguez to operate mobile equipment or participate in firefighting/hazardous material response. (McShane Aff. ¶15; Martinets Aff. ¶ 8; Williams Aff. ¶ 9.)  Mr. Martinets called Rodriguez that same day to ask whether he intended to comply with Dr. McShane's instructions, and Rodriguez then informed Mr. Martinets for the first time that he was deaf in his left ear. (Martinets Aff. ¶ 8.) Mr. Martinets told Rodriguez that if he did not obtain a corrective device for his hearing and return to Alcoa Medical for retesting by his January 14, 2008 start date, Alcoa would rescind his employment offer. (*Id.* ¶ 10.) After receiving no response from Rodriguez, on January 16, 2008, Mr. Martinets sent Rodriguez a letter rescinding the employment offer because he did not meet the minimum hearing requirements for the Operator position. (*Id.* ¶ 11; Letter, Dkt. No. 13, Ex. 2, Tab 4.)

On advice from a cousin, Rodriguez contacted the Equal Employment Opportunity Commission (EEOC) to complete an Intake Questionnaire and file a charge alleging claims for disability discrimination ("EEOC Charge"). (EEOC Intake Questionnaire, Dkt. No. 13, Ex. 11.) The EEOC issued Rodriguez a Notice of Right to Sue on September 11, 2009. (Notice of Rights, *Id.*, Ex. 12.) Rodriguez filed the instant action on December 10, 2009, alleging that Alcoa discriminated against him in violation of the ADA. Specifically, Rodriguez contends that Alcoa

4

rescinded the conditional offer of employment in January 2008 because of his hearing impairment, which he claims is both a "disability" and a "perceived disability." Rodriguez further claims that Alcoa failed to accommodate his disability in violation of the ADA. Alcoa now moves for summary judgment on all of Rodriguez' claims.

## II. Standard of Review

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718—19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323—25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's,*

*Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations" or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Freeman v. U.S.*, 2005 WL 3132185, *2 (S.D. Tex. Nov. 22, 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## III. Discussion

The Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*,[3] "prohibits an employer from discriminating against an 'individual with a disability' who, with 'reasonable accommodation,' can perform the essential functions of the job." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 393 (2002) (citing 42 U.S.C. §§ 12112(a) and (b)).

### A. Rodriguez' *Prima Facie* Case of Discrimination

Under the familiar *McDonnell Douglas* framework, Rodriguez must first establish a *prima facie* case of discrimination by showing: (1) he suffers from a disability as defined by the ADA; (2) he was qualified for his job; (3) he experienced an adverse employment action because of his disability; and (4) Alcoa replaced him with or treated him less favorably than a non-disabled employee. *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once Rodriguez establishes his *prima facie* case, the burden shifts to Alcoa to articulate a legitimate, non-discriminatory

---

3. Congress recently enacted the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008), which did not take effect until January 1, 2009. The Fifth Circuit has held that the changes do not apply retroactively. *E.E.O.C. v. Argo Distribution, LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009).

reason for the adverse employment action. *Id.* Once Alcoa articulates such a reason, the burden shifts back to Rodriguez to show by a preponderance of the evidence that the reason was (1) merely a pretext for unlawful discrimination, or (2) only one of the reasons for Alcoa's actions and that another motivating factor was Rodriguez' disability. *See Id.*; *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Alcoa concedes that rescinding Rodriguez's conditional employment offer was an adverse employment action, but maintains that summary judgment is nevertheless appropriate because Rodriguez is not disabled under the ADA, and he cannot perform the essential functions of the Operator position.

### 1. Is Rodriguez Disabled Under the ADA?

The threshold issue in Rodriguez' *prima facie* case is a showing that he suffers from a disability protected by the ADA. *See Hamilton v. Southwestern Bell Telephone Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998); *Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996). A plaintiff is "disabled" under the ADA if he: (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded by his employer as having such an impairment. 42 U.S.C. § 12102(1).

Rodriguez claims that his hearing impairment renders him both "disabled" and "regarded as disabled" under the ADA. Despite the inconsistency in Rodriguez' claim that he is both disabled and erroneously perceived as disabled, the Court will consider both arguments below. *See Cooper v. AT&T Corp./Lucent Technology*, 1998 WL 1784223, *4 n.68 (W.D. Tex. Oct. 22, 1998) ("The Court notes the factual inconsistency in [Plaintiff]'s claims. On one hand, [Plaintiff] claims she is a disabled qualified individual (having a substantially limiting impairment) entitled

7

to reasonable accommodations and on the other hand she claims that [her employer] erroneously perceived her as having a substantially limiting impairment.").

### a. Does Rodriguez have a physical or mental impairment that substantially limits one or more of his major life activities?

There is no dispute that Rodriguez has a hearing impairment. However, merely having an impairment does not make one disabled for purposes of the ADA. *Hamilton*, 136 F.3d at 1050; *Ross v. Baylor College of Medicine*, 2010 WL 2710397, at *5 (S.D. Tex. Jul. 7, 2010). To be disabled within the meaning of the ADA, Rodriguez must show that his impairment "substantially limited" one or more major life activities. 42 U.S.C. § 12102(2); *see also Ivy v. Jones*, 192 F.3d 514, 516 (5th Cir. 1999) ("The particularized inquiry mandated by the ADA centers on *substantial limitation of major life activities, not mere impairment*.") (emphasis added).

> An individual is "substantially limited" if he or she is:
>
> (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner, or duration under which [he or she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). "Major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C.A. § 12102(2)(A). In determining whether an individual's impairment substantially limits a major life activity, courts should consider the following factors: "(i) The nature and severity of the impairment, (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

While Rodriguez has not identified the "major life activity" in which he is substantially limited, the Court will address both hearing and working as the major life activities at issue in this litigation.

### i. Hearing

Despite his hearing impairment, Rodriguez "live[s] a normal life." (Rodriguez Dep. at 227:7-12.) Rodriguez graduated from high school, married, and raised children. (*Id.* at 228:6-7, 17:2—19:5.) He also cares for himself and has maintained long-term employment throughout his life. (*Id.* at 227:25—228:5.) Rodriguez further acknowledges that he does not "feel burdened by a hearing problem," nor does his hearing impairment "limit or hamper[] [his] personal or social life." (Miracle Ear Records, Dkt. No. 13, Ex. 13 at 2.) To the contrary, Rodriguez explicitly stated during his deposition testimony that his hearing impairment in no way affects how he lives his normal life. (Rodriguez Dep. at 227:13-15.)

The Court finds that Rodriguez' own admission that his hearing impairment in no way affects his day-to-day life shows that he is not substantially limited in the major life activity of hearing. *See Kemp v. Holder*, 610 F.3d 231, 236 (5th Cir. 2010) (affirming district court's finding that plaintiff was not disabled where plaintiff admitted he was not substantially limited in any life activity); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995) (finding plaintiff was not disabled where plaintiff's own testimony revealed she was not substantially limited in any major life activities); *Preston v. Victoria Indep. Sch. Dist.*, 2010 WL 2735729, at *9 (S.D. Tex. July 12, 2010) (finding plaintiff was not disabled where plaintiff "undermined her own factual evidence of disability" by testifying that she was able to perform normal daily activities, like driving, cleaning, and getting dressed).

9

### ii. Working

With regard to working,

> [S]ubstantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). While the Fifth Circuit "has little precedent giving examples of what constitutes a 'class of jobs,' . . . [t]he Supreme Court has summarized these considerations by saying: 'If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.'" *Tullos v. City of Nassau Bay*, 137 F. App'x 638, 648 (5th Cir. 2005) (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999) (superseded on other grounds by the 2008 amendments to the ADA)).[4] "A physical or mental impairment that only affects the claimant's ability to engage in a narrow range of jobs or a particular job alone 'does not substantially limit one or more major life activities.' . . . Instead, 'the impairment must substantially limit employment generally.'" *Carter*

---

4. In addition to the factors listed in § 1630.2(j)(2), the Court may also consider the following factors when determining whether an individual is substantially limited in the major life activity of working:

   (A) The geographical area to which the individual has reasonable access;

   (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills, or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

   (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills, or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

10

*v. Ridge*, 255 F. App'x 826, 829—30 (5th Cir. 2007) (quoting *Hileman v. City of Dallas*, 115 F.3d 352, 354 (5th Cir. 1997)).

The summary judgment evidence proffered by Alcoa shows that Rodriguez is able to work a broad range of jobs and has maintained steady employment for most of his adult life. Specifically, the employment application Rodriguez submitted to Alcoa listed several long-term jobs, including a position with HL&P/Centerpoint Energy as a meter reader/field service representative from approximately 1992 through 2004. (Employment Application, Dkt. No. 13, Ex. 2, Tab 1 at 2.) Sometime after his termination from HL&P/Centerpoint, Rodriguez began working for Verde Environmental Solutions as a service tech. (*Id.*; Rodriguez Dep. at 10:14-17; 21:1-5.) Rodriguez also worked briefly for a company called Digco Utility Construction in 2007. (Rodriguez Dep. at 167:3-13.) When asked directly whether his hearing impairment has ever affected his ability to work, Rodriguez answered, "Never." (Rodriguez Dep. at 228:3-5.)

The Court finds that Rodriguez' own admission that his hearing impairment has never affected his ability to work, combined with the evidence of his extensive work history, shows that he is not substantially limited in the major life activity of working. *See Still v. Freeport-McMoran, Inc.*, 120 F.3d 50, 52 (5th Cir. 1997) (plaintiff was not disabled under the ADA because "[t]he "wide variety of work experiences" in his employment history "demonstrate[d] that [he was] able to perform a 'broad range' of jobs"); *Foreman v. Babcock & Wilcox Co., et al.*, 117 F.3d 800, 806 (5th Cir. 1997) (plaintiff's testimony that he was fully capable of performing any job at facility except one showed he was not restricted from performing an entire class of jobs); *Dutcher*, 53 F.3d at 727 (5th Cir. 1995) (plaintiff's testimony and past work experience were evidence that she was not significantly restricted from performing an entire class of jobs).

11

Based on the summary judgment evidence, particularly Rodriguez' own testimony that his hearing impairment in no way affects his daily activities, the Court finds that Rodriguez has failed to create a genuine issue of material fact as to whether he is substantially limited in any major life activity.

### b. Did Alcoa regard Rodriguez as disabled?

A person is "regarded as" disabled if he: (1) has an impairment that is not substantially limiting but that his employer perceives as being substantially limiting; (2) has an impairment that is substantially limiting only because of the attitudes of others toward such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment. *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 281 (5th Cir. 2000); *Bridges v. City of Bossier*, 92 F. 3d 329, 332 (5th Cir. 1996). *See also* 29 C.F.R. § 1630.2(l); *Sutton*, 527 U.S. at 489 ("[I]t is necessary that [the employer] entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.").[5]

To satisfy his *prima facie* burden of showing that he was "regarded as" disabled, Rodriguez must show that his hearing impairment, as perceived by Alcoa, would render him unable to perform a major life activity that the average person can perform, or would significantly restrict the condition, manner, or duration in which Rodriguez could engage in such

---

5. Before the amendments to the ADA took effect in 2009, the definition of an individual with a disability under the ADA did not include the specification that an individual may be "regarded as" having an impairment "whether or not the impairment limits or is perceived to limit major life activity." *Moore v. Napolitano*, 2010 WL 2671850, *11 (5th Cit. June 29, 2010) (citing 29 U.S.C. §§ 705(9)(B), (20)(B) (2007)). The pre-amendment definition "was interpreted by the Supreme Court in *Sutton v. United Air Lines*, which held, in contrast to the current definition, that an employer acts unlawfully only 'when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity.'" *Id.* (quoting *Sutton*, 527 U.S. at 490). Because the events giving rise to this litigation occurred before January 1, 2009, the pre-amendment definition, as interpreted in *Sutton*, applies here. *Id.* (citing *Kemp v. Holder*, 610 F.3d 231 (5th Cir. 2010) (finding that 2008 amendments to Rehabilitation Act do not apply retroactively and applying *Sutton*)).

an activity, compared to the average person. *Deas v. River West, L.P.*, 152 F.3d 471, 480 (5th Cir. 1998). As analyzed *supra*, Rodriguez has a hearing impairment that is not substantially limiting as defined by the ADA. The question is thus whether Alcoa mistakenly believed that Rodriguez' hearing impairment substantially limited one of his major life activities. *See Kemp*, 610 F.3d at 237. Although Rodriguez has not clearly alleged which major life activity Alcoa regarded his hearing as limiting, the Court will again address the major life activities of working and hearing.

### i. Hearing

It is undisputed that no one at Alcoa knew Rodriguez had a hearing impairment until after Rodriguez failed the hearing test for the Operator position, mainly because Rodriguez repeatedly tried to hide this fact. (Martinets Aff. ¶¶ 4,9; McShane Aff. ¶ 5; Williams Aff. ¶ 3.) Still, Alcoa's awareness of Rodriguez' hearing impairment "cannot alone prove that [Alcoa] regarded [Rodriguez] as disabled." *See EEOC v. Lyondell-CITGO Refining, L.P.*, 2008 WL 961909, at *5 (S.D. Tex. Apr. 9, 2008) (quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996) ("[W]e hold that the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action.")). Rodriguez's failure to meet the minimum hearing standard for the Operator position is also insufficient to prove that Alcoa regarded Rodriguez as substantially limited in his ability to hear. *Kemp*, 610 F.3d at 237—38 (defendant's minimum hearing requirement alone did not create a fact issue regarding whether the plaintiff was substantially limited in the life activity of hearing); *Lyondell-CITGO*, 2008 WL 961909 at *5 (citing *Sutton*, 527 U.S. at 471).

Moreover, Rodriguez easily communicated with Dr. McShane, Ms. Williams, and Mr. Martinets at various times both before and after his hearing impairment was revealed, and Rodriguez has presented no evidence that these individuals, or anyone else at Alcoa, considered him incapable of hearing on a functional basis even after he failed the pre-employment hearing exam. Thus, Rodriguez' hearing impairment, as perceived by Alcoa, is insufficient to constitute a *substantial* limitation. *Lyondell-CITGO*, 2008 WL 961909, at *5  (citing *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999) (holding a mere "difference" in a person's ability to perform major life activities as compared to ordinary persons does not qualify as a "substantial limitation" unless the limitation is significant)); *see also Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1007 (9th Cir. 2007) (employee's "failure to meet the [employer's] hearing standards does not raise a genuine issue of material fact that the [employer] regarded her as disabled").

Accordingly, the Court finds that Rodriguez has failed to create a genuine issue of material fact as to whether Alcoa "regarded him" as substantially limited in the major life activity of hearing.

### ii. Working

With respect to working, Rodriguez must show that Alcoa erroneously believed he was "'significantly restricted in the ability to perform either a *class of jobs or a broad range of jobs* in various classes as compared to the average person having comparable training skills and abilities.'" *Kemp*, 610 F.3d at 238 (quoting *Sutton*, 527 U.S. at 491) (italics in *Kemp*).

Much like Rodriguez, the plaintiff in *Kemp* was discharged because he failed to meet the minimum hearing requirement for his position. *Kemp*, 610 F.3d at 233. In challenging his termination, Kemp argued that his employer's hearing requirement—which required employees to take a hearing exam without the use of hearing aids—was evidence that the employer regarded

14

him as substantially limited in the major life activity of working. *Id.* at 238. The Fifth Circuit disagreed, finding that Kemp's disqualification from one position because of the hearing requirement was not evidence that his employer regarded him as significantly limited in his ability to perform a broad class of jobs. *Id.* (quoting *Dutcher*, 53 F.3d at 727 ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.")).

The Supreme Court has held that an employer may freely "decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job" without violating the ADA. *Sutton*, 527 U.S. at 473; s*ee also Foreman*, 117 F.3d at 807 n.10 ("An employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish *per se* that the employer regards the employee as having a substantial limitation on his ability to work in general.") (quoting *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993)). Thus, here, as in *Kemp*, Alcoa's determination that Rodriguez' hearing impairment disqualified him from the Operator position is insufficient to show that Alcoa regarded Rodriguez as significantly restricted in his ability to work in general. Both Dr. McShane and Mr. Martinets also told Rodriguez to return to Alcoa Medical for retesting after he got his hearing corrected (McShane Aff. ¶ 10; Martinets Aff. ¶ 10), which further supports a finding that Alcoa did not consider Rodriguez to be disabled. *See, e.g.*, *Molina v. Transocean Deepwater, Inc.*, 2010 WL 3123147, at *8 (S.D. Tex. Aug. 3, 2010) (plaintiff produced no evidence employer regarded him as unable to perform a broad class of jobs where employer invited him to reapply after he fully recuperated from a temporary impairment); *Nealy v. Patterson Dental Supply, Inc.*, 2005 WL 3132182, at *6 (S.D. Tex. Nov. 22, 2005) (employer's

invitation to plaintiff to reapply after her injury healed was "uncontroverted evidence" that employer did not regard plaintiff as disabled).

Accordingly, the Court finds that Rodriguez has failed to create a genuine issue of material fact as to whether Alcoa "regarded him" as substantially limited in the major life activity of working.

### 2. Was Rodriguez "Otherwise Qualified" for His Job?

Even if Rodriguez could establish that he was disabled under the ADA, he still must show that he was "otherwise qualified" for his job. *Chiari v. City of League City*, 920 F.2d 311, 315 (5th Cir. 1991); *Leckelt v. Board of Commissioners*, 909 F.2d 820, 827 (5th Cir. 1990). Determining whether Rodriguez was qualified for his job involves a two-prong test. First, the Court must examine whether Rodriguez could perform the "essential functions" of his job. *Chandler v. City of Dallas*, 2 F.3d 1385, 1393—94 (5th Cir. 1993). Second, the Court must determine whether Rodriguez proved that Alcoa could have made a "reasonable accommodation" to enable him to perform his job. *See id.*

> The ADA provides that a reasonable accommodation may include:
>
> (A)  making existing facilities used by employees readily accessible to and useable by individuals with disabilities; and
>
> (B)  job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training material or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). If Rodriguez is able to demonstrate that an accommodation existed and that such accommodation was reasonable, then Alcoa "may defend by showing business necessity or undue burden." *See Riel v. Elec. Dada Sys. Corp.*, 99 F.3d 678, 682 (5th Cir. 1996).

16

The position for which Rodriguez applied—Plant Utility Operator—is generally responsible for cleaning and repairing equipment, but also performs other duties, such as operating bobcat loaders and forklifts. (Operator Job Description, Ex. 2, Tab 3 at 1—2.) Operators work under potentially hazardous conditions, with a significant risk for potential injury to themselves and others. (Martinets Aff. ¶ 5.) The plant is equipped with numerous audible alarms to signal hazardous spills or other safety-sensitive conditions, and with the heavy machinery loudly operating within the plant, Operators must be aware of everything happening in the areas around them. (*Id.*; Operator Job Description at 2.) As such, Operators are required to meet minimum hearing standards to ensure that they can perform their job duties without placing themselves or others at an unreasonable risk of injury or death. (*Id.*)

It is undisputed that Rodriguez failed the pre-employment hearing test, and was therefore not qualified for the Operator position without some accommodation. Rodriguez does not challenge Alcoa's minimum hearing standards for the Operator position, nor does he challenge Alcoa's requirement that he submit to a pre-employment hearing test. Instead, Rodriguez claims that he "does not need mitigating devices in order to function in the workplace" and "was qualified for the position . . . without the need for mitigating measures, such as a hearing aid." (Compl. ¶¶ 6, 11.) Because Rodriguez has failed to identify any accommodation that would render his hearing within the acceptable limits for the position, he therefore cannot show that he was "otherwise qualified" for the job, as required under the ADA. *See Washington v. Occidental Chem. Corp.*, 24 F. Supp. 2d 713, 728 (S.D. Tex. 1998) ("If no reasonable accommodation would enable Plaintiff to perform the essential functions of her position, then she is not a 'qualified individual' with a disability and is not afforded the protections of the ADA.") (citing

17

*Guneratne v. St. Mary's Hosp.*, 943 F. Supp. 771, 774 (S.D. Tex. 1996), *aff'd* 119 F.3d 3 (5th Cir. 1997)).

Accordingly, the Court finds that Rodriguez has failed to establish a *prima facie* case of discrimination by raising a genuine issue of material fact as to whether he suffers from a disability as defined by the ADA, or whether he was otherwise qualified for his job. Alcoa's motion for summary judgment with respect to Rodriguez' disability discrimination claim is therefore **GRANTED**.

### B. Rodriguez' Failure-to-Accommodate Claim

Rodriguez further alleges that Alcoa failed to accommodate his alleged disability because Alcoa did not ask him "what[,] if any, mitigating accommodation would be needed in order to allow [him] to perform the duties of a Plant Utility Operator," and "further failed and refused to engage in a discussion with Rodriguez regarding his ability to perform the essential function of the job or the need for an accommodation." (Compl. ¶¶ 12, 15.)

Rodriguez' EEOC Charge does not include the term "reasonable accommodation," and it contains no allegations even hinting at the possibility he might raise such a claim in the future. In fact, Rodriguez failed to respond to any questions in the EEOC Intake Questionnaire related to accommodation, including: "Did you ask your employer for any assistance or change in working condition because of your disability? . . . Did you need this assistance or change in working condition in order to do your job? . . . [or] Describe the assistance or change in working condition requested." (EEOC Charge at 3, ¶ 10.) Because Rodriguez did not include a failure-to-accommodate claim in his EEOC Charge, he is therefore barred from asserting it now. *EEOC v. Shell Oil Comp.*, 466 U.S. 54, 77 (1984); *see also Dao v. Auchan Hypermarket,* 96 F.3d 787, 789 (5th Cir. 1996).

Even if Rodriguez had raised a failure-to-accommodate claim in his EEOC Charge, Rodriguez is not entitled to any accommodation under the ADA because he is not disabled. *Newberry v. East Texas State Univ.*, 161 F.3d 276, 280 (5th Cir. 2010). Furthermore, it was entirely within Rodriguez' control to find out what, if any, devices were available to render his hearing within the limits set for the Operator position, and Rodriguez has presented no evidence that he made any attempt whatsoever to obtain such a device or otherwise bring an appropriate request for accommodation before Alcoa. As the Fifth Circuit has observed, "[I]t is the responsibility of the individual with the disability to inform the employer that an accommodation is needed . . . . [I]f the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 156 (5th Cir. 1996). Because Rodriguez has failed to present any evidence that he requested an accommodation from Alcoa, his claim is without merit.

Accordingly, Alcoa's motion for summary judgment as to Rodriguez' failure-to-accommodate claim is **GRANTED**.

**IV. Conclusion**

For the foregoing reasons, Defendant Alcoa's Motion for Summary Judgment (Dkt. No. 13) is **GRANTED**.

It is so **ORDERED**.

**SIGNED** this 4th day of April, 2011.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE